422 P.2d 63

Rex SUTTON, Plaintiff-Appellant,

v.

D. A. BROWN and Ruby Brown et al., Defendants-Respondents.

No. 9836.

Supreme Court of Idaho.

Dec. 29, 1966.

J. H. Felton, Lewiston, for appellant.

J. Ray Cox, Jr., Coeur d'Alene, for respondents.

McFADDEN, Chief Justice.

Rex Sutton, plaintiff-appellant, instituted this action to quiet title to a certain water system or pipeline, located in the Cavanaugh Bay area of Priest Lake, in Bonner County, Idaho, in which system each of the several named defendants-respondents is alleged to claim some right, title or interest. This cause was before this court on a previous occasion; see: Sutton v. Brown, 85 Idaho 104, 375 P.2d 990.

The system or pipeline in question, consists of an underground pipeline leading southerly from a diversion works on Cougar Creek. The existing pipeline was originally constructed in the 1930's by the Civilian Conservation Corps to furnish water to its camp. The precise date of its construction does not appear. At the time of its construction a pipeline previously constructed by various parties, and which was used by them to furnish domestic water to their cabins, was destroyed. When the Civilian Conservation Corps closed its camp in the winter of 1939, the lower part of the line was removed, but the pipeline now in controversy (herein referred to as the C.C.C. pipeline), was left in the ground and abandoned.

In 1940 Mr. Sutton leased from the State of Idaho, lots 71 and 72, Priest Lake Cottage Sites. In 1942, he connected a ¾″ pipeline to the end of the C.C.C. pipeline and ran the line to his leased property. This line extended about 200 feet on State land and across the land leased from the State by plaintiff.

The defendants are all lessees of similar Cottage Sites, from the State of Idaho. Their lots are all northerly from plaintiffs properties and are between the point where the plaintiff originally connected to the C.C.C. pipeline and the point of diversion from Cougar Creek. Each of the defendants is connected with the original pipeline.

In 1929 Defendant Hawkins participated in the construction of a pipeline southerly from Cougar Creek, used to furnish water to several cabins. Construction of the C.C.C. pipeline and a service road to the camp necessitated destruction of this line. He later connected to the C.C.C. pipeline.

Defendant Goldsworthy bought his cabin in 1949. He testified it had been constructed in the 1920's and was connected to the pipeline when he purchased it. Defendant Brown connected in 1947; defendant James in 1946; a connection to the pipeline was in existence when defendant Belles acquired his cabin in 1948; defendant Peringer connected to Brown's lateral line in 1955; defendant Webb acquired his cabin and attached to the Peringer line or lateral in 1958.

Each of the defendant's lease from the State on the Cottage Sites contained the following clause concerning use of domestic water:

"Lessee shall be entitled to water for domestic or cabin purpose to the extent only that the water system in the area is able to supply the same. * * *"

Each defendant has used the water from the disputed pipeline for domestic purposes.

In the early 1940's plaintiff was engaged in the construction and operation of a resort, known as "Sutton's Resort," then and later serviced by the C.C.C. pipeline and the extension he installed. In 1945 plaintiff purchased Lots 71 and 72 from the State and in 1947 he purchased the adjacent Lots 73, 74 and 75. He had also purchased farming property known as the "Fenton Place", which was near by. In 1961 plaintiff subdivided portions of this property into 40 lots, a number of which he has sold. He testified he laid $3/4''$ main lines with $1/2''$ laterals from these main lines to furnish water to the individual lots. This system of "mains" and "laterals" is connected to plaintiff's pipeline extension from the old C.C.C. pipeline.

Plaintiff claims absolute ownership of the whole of the system from the diversion works on Cougar Creek, including the old C.C.C. pipeline. He asserts that the use by the defendants of the pipeline was permissive only. In 1961, after the property was subdivided, plaintiff's attorney by letter demanded of each defendant that he disconnect from the line, to which demand the defendants refused to accede.

Plaintiff's claim of ownership of the pipeline is based on the deeds he received from the State of Idaho, and also on the decree in the case of Sutton v. Tovy, Rosenberger, and Wilson, Bonner County Case No. 7596, mentioned in the first appeal. Plaintiff sought to have copies of the findings of fact, conclusions of law and decree in Case No. 7596 admitted into evidence in the instant action, which offer was denied.

None of the defendants complained of insufficient water for their purposes. Plaintiff has made no claim of insufficient water prior to the time he subdivided his property, but now claims he needs all the water the present system is able to provide, "and probably more". Plaintiff asserts that this present action is not one for an adjudication of water rights, but solely to quiet title to the water system.

The trial court entered findings of fact, conclusions of law and judgment in favor of the defendants, dismissing the plaintiff's action; plaintiff has perfected this appeal from the whole of the judgment.

■ The trial court did not err in refusing to admit into evidence the findings of fact, conclusions of law and decree in Bonner County Case No. 7596. The record fails to establish any connection between the defendants named in that case (No. 7596) and the defendants in the instant case. Even though Tovey, Rosenberg and Wilson were mentioned in the conclusion of law in Case No. 7596, as "defendant officers of the State of Idaho", the instant record is devoid of evidence reflecting their capacity or how a decree against them would involve the instant defendants. In Sutton v. Brown, 85 Idaho 104, 375 P.2d

090, 992, this court in discussing Bonner County Case No. 7596 stated:

> "There is nothing whatever in said second amended complaint, or in the defendants' answer to indicate that the three defendants therein named [Tovey, Rosenberg and Wilson] are made parties in any capacity other than as individuals. * * *.

> "From a careful examination of the record in case No. 7596 we are unable to find, nor is our attention called to, any support for a conclusion that the defendants in that case were authorized in any respect to represent the appellants named in this action as to their claimed rights to the pipeline, diversion works or water rights there or here involved. Nor is there any showing that the defendants in case No. 7596 undertook to or did in any respect represent these defendants. [The defendants in the instant case]" 85 Idaho at 108.

■ In order that these offered exhibits be admissible, as relevant to plaintiff's claim of res judicata or estoppel by judgment, it was essential that the privity of the parties in the two actions be established. 1B Moore's Federal Practice, ¶ 0.-441[2] (2nd ed). The requirement of privity for the application of the doctrines of res judicata or collateral estoppel by judgment is applicable in quiet title actions. 44 Am.Jur. 80, Quieting Title § 95.

Plaintiff's primary contention is that the trial court erred in its refusal to quiet title in him to the entire pipeline and diversion works. He asserts that the pipeline and diversion works are appurtenances to the land deeded to him by the State, and that since the deeds conveying to him Lots 71, 72, 73, 74 and 75, recite:

> "To have and to hold the said premises and parcel of land above particularly described with the appurtenances thereon, etc."

of necessity he is the owner of the pipeline and diversion works.

■ The parties agree that when the Civilian Conservation Corps dismantled its camp, the system and any water right out of Cougar Creek was abandoned. Upon such abandonment of the rights in the pipeline and the right to use of the water, all such rights reverted to the State of Idaho (I.C. § 42–222; See: Albrethsen v. Wood River Land Co., 40 Idaho 49, 231 P. 418; Chill v. Jarvis, 50 Idaho 531, 298 P. 373; Graham v. Leek, 65 Idaho 279, 144 P. 2d 475), subject to existing rights then held by certain of the defendants or their predecessors, i.e., defendant Hawkins and defendant Goldsworthy, to use the pipeline as a means of conveying water from Cougar Creek to their individual cabins.

■ Even though plaintiff asserts that this is not an action to establish water rights, the very nature of the claims being asserted necessitates consideration of the rights of the parties in the pipeline. All parties recognize that this pipeline is of value where it is situate solely as a means of conveying water from Cougar Creek to the individual leaseholder's place of use. It is in the nature of an artificial water course, wholly situate on state owned lands, and one which the State recognizes is for the benefit of the holders of the cabin site leases. The leases to the defendants provide:

> "DOMESTIC WATER:
>
> Lessee shall be entitled to water for domestic or cabin purposes to the extent only that the water system in the area is able to supply the same. Use of said water may be curtailed upon oral notice by the State Land Commissioner or his duly authorized agent."

■ The inclusion of the general appurtenance clause in plaintiff's deeds cannot be held to convey to him title to and dominion over the entire pipeline. When he first took possession of the various lots under the leases from the State of Idaho, he conducted water to his lots by constructing an additional pipeline connected to the old C.C.C. pipeline. Later, after taking title

to the lots by deed, the use of the pipeline was not changed, but remained the same, as under the leasehold.

"[T]he word 'appurtenant' will only carry with it easements and servitudes used and enjoyed with the land for whose benefit they were created. [and] Even an easement will not pass unless it is necessary for the enjoyment of the thing granted." Humphreys v. McKissock, 140 U.S. 304, 11 S.Ct. 779, 781, 35 L.Ed. 473.

Ownership of the pipeline was not, at the time of execution of the deeds by the state, reasonably necessary to the enjoyment of the lands conveyed, because all that the pipeline was used for, was as a means of conveyance of whatever water plaintiff used at the time. To hold that the use of the term "appurtenances" conveyed title to the pipeline would be creating an exclusive servitude over lands of the State by implication. In Davis v. Gowen, 83 Idaho 204, 360 P.2d 403, 88 A.L.R.2d 1192 (1961), this court stated:

"The creation of easements by implication rests upon exceptions to the rule that written instruments speak for themselves, and because implied easements are in derogation of such rule, they are not favored by the courts. The general rule is that the burden of proof rests upon the person asserting it to show the existence of facts necessary to create by implication an easement appurtenant to his estate. 17A Am.Jur. § 37, P. 645, 647." 83 Idaho at 212, 360 P.2d at 408.

Appellant did not sustain his burden of proving that title to the entire C.C.C. water system passed to him as a structural appendant to the land deeded to him by the State. By reason of the absence of an express conveyance of such system to him in the deeds, the trial court did not err in decreeing that he take nothing by his complaint.

Other error assigned by plaintiff relating to a finding of an adverse user by defendants is dependent upon and presupposes absolute ownership by plaintiff of the water system. Under the determination herein such assignment need not be further considered.

The judgment is affirmed. Costs to defendants.

McQUADE, TAYLOR, SMITH and SPEAR, JJ., concur.