729 P.2d 1090

**Hazel FARRELL, Paul Huetter and Mary McKee, Plaintiffs-Appellants,**

v.

**William R. BROWN and Virginia Brown, husband and wife, Defendants-Respondents.**

No. 16095.

Court of Appeals of Idaho.

Dec. 2, 1986.

Everett D. Hofmeister, Coeur d'Alene, for plaintiffs-appellants.

E.L. Miller (argued) and Janet D. Robnett (Paine, Hamblen, Coffin, Brooke & Miller), Coeur d'Alene, for defendants-respondents.

WALTERS, Chief Judge.

The plaintiffs, Hazel Farrell and her children, brought this action to quiet title to a tract of land along Coeur d'Alene Lake. Two principle issues are presented: (1) whether the plaintiffs are barred by res judicata from claiming ownership to the property, as a result of prior default judgments in favor of defendants' predecessor and the defendants; and (2) whether the district court erred in finding that the plaintiffs had failed to establish an interest in the property either under a claim of adverse possession or by a prescriptive easement. We affirm the judgment.

Hazel Farrell (formerly Hazel Huetter) and her children, Paul Huetter and Mary (Huetter) McKee (hereinafter collectively referred to as the Huetters), jointly own property at Mica Bay on the shore of Coeur d'Alene Lake, adjacent to property owned by the defendants, William and Virginia Brown. Both properties were formerly owned by the Coeur d'Alene Lake Land and Fruit Company, Inc. (the Company). Mrs. Farrell's late husband, Paul J. Huetter, was a director of the Company.

In 1910, the Company recorded a subdivision plat, entitled "Clam-se-net (Close to the Water)," with the intention of developing a resort. Located on the northeastern shore of Mica Bay, the subdivision lay within Government Lots 1 and 4 of Section 10, Township 49 North, Range 4 West of the Boise Meridian, in Kootenai County, Idaho.

The plat included an unbounded area of undefined size and purpose between a street, Lake Shore Drive, and Coeur d'Alene Lake. It is the ownership of the strand of beach and waterfront that is in dispute in this action. The property involved is illustrated by the accompanying sketch.

After the Clam-se-net plat was recorded, the Company never developed the intended resort. During the 1930's Kootenai County obtained an interest in the platted land because of nonpayment of taxes. In 1940 Kootenai County sold "Lots 1 to 21, Block 1; Lots 1 to 22, Block 2; Clam-se-net" by tax deed to W.L. Korter, the Browns' predecessor in interest. In 1958, by default judgment, Korter quieted title to these lots, together with appurtenances including any "riparian" (littoral) rights. Mrs. Farrell's then husband, Paul J. Huetter, was named and served as a defendant in Korter's action, not as an individual, but as a director of the Company.

The Browns acquired the lots from Korter by the same description as in the tax deed from the county to Korter, referring only to the Clam-se-net lot and block numbers. The Company's remaining property, described as "government lot one (1), and ... an unplatted part of government lot four (4)," was ultimately conveyed to the Huetters.

In 1958, the Browns petitioned for and obtained vacation by Kootenai County of the Clam-se-net plat. In vacating the plat, the board of county commissioners recited that the Browns were the sole owners of the property within Clam-se-net. Soon thereafter the Browns commissioned a survey of the property (the Kindler survey). In 1960, they sought to quiet title to the entire property formerly in the subdivision. However, their complaint included a description prepared by Kindler that did *not* correspond to the description on the face of the Clam-se-net plat. That action named Farrell and her then husband, Paul J. Huetter, as defendants. They were served but did not appear in the action and a default judgment was entered.

Almost twenty years later and relying on another survey (the Meckel survey), the Browns constructed a fence on their southeastern boundary adjoining the Huetter property. This fence extended nearly to the water. Because the fence interfered with access along the lake, the Huetters brought this action claiming title to the strand and alleging trespass by Brown.

The district court found that the Huetters' claim was barred by the judg-

ments which had been entered in 1958 in favor of Korter, and in 1960 in favor of the Browns. In addition, the court concluded that, even if not barred, the Huetters had not proven any claim to the strand. The court denied relief and quieted title to the property, as described by the Kindler and Meckel surveys, in the Browns.

The Huetters contend that "government lot one ... [and] an unplatted part of government lot four ...," as described in their chain of title, includes the strand between Lake Shore Drive and the bed of the lake owned by the State of Idaho as a navigable body of water. *See Heckman Ranches, Inc. v. State,* 99 Idaho 793, 589 P.2d 540 (1979). In the alternative, they claim an interest in the strand either by adverse possession or by prescriptive easement. The Huetters do not claim that portion of the property laid out as the original lots and blocks of Clam-se-net subdivision. In contrast, the Browns counter that their property includes the strand that abuts the high-water mark. They claim their title was obtained either from Kootenai County or by adverse possession, and was quieted in prior actions.

We first address whether the Huetters' claim to ownership of the strand is barred by res judicata as a result of prior judgments quieting title to property in the Clam-se-net subdivision. In *Aldape v. Akins,* 105 Idaho 254, 668 P.2d 130 (Ct. App.1983), we adopted the RESTATE-MENT (SECOND) OF JUDGMENTS (1982) "with its definitive treatment of claim preclusion" to clarify res judicata in Idaho. Collateral estoppel (issue preclusion) is only applicable where specific issues actually have been litigated and decided. *Pocatello Industrial Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980). Thus, a defaulting party ordinarily is not barred from later raising a particular issue which was not resolved in earlier litigation. RE-STATEMENT (SECOND) OF JUDG-MENTS § 27 comment e (1982) (hereinafter "RESTATEMENT (SECOND)").

Nevertheless, the policy of finality engendered in claim preclusion, or res judi-

cata in the narrow sense, may work to bar a claim not actually raised in earlier litigation. *Aldape v. Akins, supra.* The doctrine bars relitigation by the parties of claims between them that were brought or should have been brought in a prior action. Particularly, in respect to a defendant's failure to assert a claim in a prior action between the parties, the RESTATEMENT (SECOND) provides:

§ 22. *Effect of Failure to Interpose Counterclaim*

....

(2) A defendant who may interpose *a claim* as a counterclaim in an action but fails to do so *is precluded,* after the rendition of judgment in that action, from maintaining an action on the claim *if:*

....

(b) The relationship between the counterclaim and the plaintiff's claim is such that *successful prosecution of the second action would nullify the initial judgment* or would impair rights established in the initial action. [Emphasis added.]

"The bar of claim preclusion, as set forth in the SECOND RESTATEMENT, applies with special force to quiet title actions." *Aldape v. Akins,* 105 Idaho at 259, 668 P.2d at 135. *Cf.* RESTATEMENT (SEC-OND) § 43. *See generally* Annotation, *Doctrine of Res Judicata As Applied to Default Judgments,* 77 A.L.R.2d 1419, § 16 (1961). As succinctly stated by Justice Cardozo,

A judgment in one action is conclusive in a later one, not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first.

*Schuylkill Fuel Corp. v. B & C Nieberg Realty Corp.,* 250 N.Y. 304, 165 N.E. 456, 457 (1929).

■ In a quiet title action, the Idaho Supreme Court has suggested by dicta that a defendant's claim of title to disputed land "would appear to be [a] compulsory counterclaim" as defined in Rule 13(a), I.R.C.P. *Hook v. Horner,* 95 Idaho 657, 663, 517 P.2d 554, 560 (1973), *citing* 3 MOORE'S FED. PRACTICE, ¶ 13.12[1] (1972). *See also Smith v. Kessler,* 22 Idaho 589, 127 P. 172 (1912). Complementary protection is provided to a defendant who successfully prevails against a plaintiff's quiet title action. A judgment against the plaintiff in such an action determines the title as between the parties and protects a noncounterclaiming defendant as fully as would an affirmative decree in his favor. *Coghlan v. City of Boise,* 36 Idaho 613, 212 P. 867 (1923). It serves both justice and judicial efficiency to similarly protect prevailing plaintiffs from subsequent claims by the defendant.

■ However, a prior judgment usually will not bar a claim by an individual omitted as a party in the earlier action, or where the same property was not the subject of that action. *See Lawrence v. Ayres,* 206 Okl. 218, 242 P.2d 142 (1952) (overruled on other grounds, *Gardner v. Jones,* 309 P.2d 731 (Okl.1957)); 50 C.J.S. *Judgments* § 652 (1947). This requirement of identity or privity with parties in the prior litigation is applicable to quiet title actions. *Sutton v. Brown,* 91 Idaho 396, 422 P.2d 63 (1966); *Lewiston Lime Co. v. Barney,* 87 Idaho 462, 394 P.2d 323 (1964). Only property rights of individuals made parties to a quiet title action are affected by the resulting judgment. *Dalton Highway District of Kootenai County v. Sowder,* 88 Idaho 556, 401 P.2d 813 (1965).

The Huetters contend that the default judgments previously entered in the Korter and Brown quiet title suits are not conclusive in the instant action, either because those judgments did not relate to the now disputed strand of property, or because their predecessors (Mrs. Farrell and her husband Paul J. Huetter) were not given adequate notice that title to the strand was being quieted. With respect to the Browns' action, we disagree.

■ Korter's action sought to quiet title only to the platted lots within Clam-se-net. No other property was described in Korter's complaint. The Company and its directors, and Kootenai County and its board of county commissioners, were the only named defendants in the action. Because Korter's pleadings and notice specifically described property by numbered lot, we believe the resulting default judgment should not bar a subsequent action regarding other property within the same subdivision. To hold such an action conclusive as to the whole of the subdivision would require the defendants to defend neighboring property, as well as that actually claimed by the plaintiff.

However, following vacation of the plat by the county, the Browns brought their own quiet title action. In a quiet title action, the plaintiff must allege in ordinary and concise terms that he is the owner of the property at issue. *Bonner Bldg. Supply v. Standard Forest Products, Inc.,* 106 Idaho 682, 682 P.2d 635 (Ct.App.1984). The Browns' complaint used a property description derived from the Kindler survey. Mrs. Farrell and Paul J. Huetter, the Huetters' predecessors, were served with Browns' complaint.

The distances stated in the description used in the Browns' quiet title complaint fell thirty feet farther from the shore than those used in the original surveyor's description of Clam-se-net. In addition, due to a transposition of "east" for "west" in the first traverse, the point of beginning in the metes and bounds description served upon the Huetters' predecessors was approximately 2,000 feet to the east of Clam-se-net. Due to the configuration of the lake's shoreline beyond the area depicted in the sketch shown above, a point 2,000 feet to the east of that subdivision would have been located in a bay of the lake. The "east-west" transposition error was only corrected following default judgment by filing of an amended decree. The former error in distance was never corrected.

In the instant case, the district court acknowledged the flawed nature of the description used in the Browns' complaint, but found that the described area included the area now in dispute. The court specifically found that this description, despite its flaws, gave adequate notice of Browns' claim to the strand. The court found that the description in the resulting decree applied to the strand. Although apparently the Huetters' predecessors did not move to set aside the Browns' default judgment, the Huetters contend that the above flaws limit the conclusive effect of Browns' judgment. In essence, the Huetters collaterally attack the prior judgment by alleging insufficient notice with respect to the strand. Ordinarily, the proper course for the Huetters would be to seek vacation of the prior judgment. *See Acker v. Mader,* 94 Idaho 94, 481 P.2d 605 (1971). However, in the interest of judicial efficiency, we will examine their contention concerning notice.

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information,.... [Citations omitted.]

*Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ Notice must be clear, definite, explicit and unambiguous. *See* 66 C.J.S. *Notice* § 16 (1950). A notice is not clear unless its meaning can be apprehended without explanation or argument. *Id.* However, mere irregularities or immaterial defects do not nullify notice so long as they do not mislead. *Id.* "When actual notice of an action has been given, irregularity in the content of the notice or the manner in which it was given does not render the notice inadequate." RESTATEMENT (SECOND) § 3. Where the description of the property claimed in a complaint is not sufficiently definite to inform defendants

of the specific area claimed, a subsequent claim should not be barred.

The description in the Browns' quiet title complaint reads in part "thence South 43°58′ West *136.68 feet to a half inch iron pipe set on the shore* of Coeur d'Alene Lake; *thence westerly along the shore line* of Lake Coeur d'Alene as follows: [3 calls totalling 1121.23 feet] to a half inch iron pipe." (Emphasis added.) The "136.-68 feet" call fell thirty feet farther from the shore than the 167 foot call included in the original surveyor's description of Clamse-net. The later Meckel survey placed the distance to the high-water mark at 201.29 feet. Having concluded that the subdivision as described on the face of the plat was bounded by the high-water mark of the lake, the trial court found that Kindler's call was obviously in error "because such a distance would not bring one to the edge of the lake under any definition of high water line." Nonetheless the trial court concluded that this description provided adequate notice of Browns' claim to the strand. We agree.

■ Whether sufficient notice was given is a question of law where the determination turns on the construction of a written instrument. *See New Pueblo Constructors, Inc. v. State,* 144 Ariz. 113, 696 P.2d 203 (1984), modified 144 Ariz. 95, 696 P.2d 185 (1985); 58 AM.JUR.2d *Notice* § 33 (1971). Modern pleading, as reflected by I.R.C.P. 8, requires a simple, concise, and direct statement fairly apprising the defendant of the claim and the grounds upon which it rests. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See generally* 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 1202 (1969). The record indicates that Huetters' predecessors were aware the property claimed by the Browns' in their action was not 2,000 feet to the east out in the lake where the first error in the description would place it. Correspondence from the defendants' attorney in the Browns' quiet title action indicates an inspection on dry land.

Last Sunday, I went with my client to the property in question and we endeavored to determine the exact location of the property involved in the lawsuit. However, we were unable to find many of the survey markers or the survey pipes, laying out the exact location of the property. . . .

This actual notice and knowledge vitiates any supposed reliance upon the typographical error. The Huetter's contend that the ambiguity created by the conflict between the 136 foot distance in the first call and the actual distance to the shore constitutes an ambiguity negating any notice of a claim being made to the strand. This second flaw in the Kindler description is not so easily dismissed.

■ The property description in a quiet-title complaint resulting in a default judgment serves two purposes. First, it must provide notice to the defendant of the property being claimed. Second, if incorporated without amendment, it must be sufficient to identify the property for judgment purposes. "[A] judgment involving the right to possession of real property must sufficiently describe it to enable an officer charged with the duty of executing a writ of possession to go upon the ground, and, without exercising judicial functions, ascertain the locality of the lines as fixed by the judgment." *Hedrick v. Lee*, 39 Idaho 42, 49, 227 P. 27, 29 (1924).

California courts apply a similar test to the sufficiency of the description in quiet title pleadings. There, the description "is sufficient if from the description given a competent surveyor can locate the land on the ground with or without the aid of extrinsic evidence." *Stearns Ranchos Co. v. Atchison, Topeka and Santa Fe Ry. Co.*, 19 Cal.App.3d 24, 36, 96 Cal.Rptr. 317, 325 (Cal.Ct.App.1971); *Wagnor v. Blume*, 71 Cal.App.2d 94, 161 P.2d 1001 (1945). Other states simply require that the description of the land must be sufficient to identify it. *Cf. Sanchez v. Carey*, 409 S.W.2d 458 (Tex. Civ.App.1966); *see also* 74 C.J.S. *Quieting Title* § 64 (1951).

■ Here we are confronted with a description containing a facial ambiguity, but one which is easily resolved by an individual with the expertise of a surveyor. The ambiguous call extended to an "iron pipe set on the shore." The general rule is that monuments, natural or artificial, control over calls for courses and distances. *Campbell v. Weisbrod*, 73 Idaho 82, 245 P.2d 1052 (1952). Meander lines only approximating the shore are commonly used in shoreline descriptions to determine the quantity of property and not to serve as property boundaries. *Heckman Ranches, Inc., supra; see generally* 12 AM.JUR.2d *Boundaries* § 30 (1964). The Kindler survey appears to be such a description. It established the southern dimension of the property as "along the shore line of Lake Coeur d'Alene. . . ." Therefore, as the district court found, the description used in Browns' complaint would extend to the high-water mark despite the stated error in distance. However, the Huetters argue that laymen should not be expected to appear in court in response to such an ambiguous notice.

■ "[W]hatever is notice enough to excite the attention of a man of ordinary prudence and prompt him to further inquiry, amounts to notice of all such facts as a reasonable investigation would disclose." *Hill v. Federal Land Bank*, 59 Idaho 136, 141, 80 P.2d 789, 791 (1938) (regarding duty of real property mortgagee). As noted, the Huetters' predecessors were served with the Browns' complaint. The evidence indicates that the notice was sufficient to "excite the attention" of the party served. A limited inquiry was made on their behalf. Having been put on inquiry notice, it was incumbent upon them to make reasonable efforts to determine the extent of the Browns' claim by an appearance or other means. Although ambiguities in the complaint's property description would provide grounds for requesting a more definite statement, *Yeates v. Daily*, 311 Ill.2d 510, 150 N.E.2d 159 (1958), here, Huetters' predecessors apparently failed to do so.

It is often said that the doctrine of res judicata must be construed with strictness, yet it is also important to avoid the confusion and multiplicity of litigation that results if prior adjudications are not considered final. *Lynch v. Lynch*, 250 Iowa 407, 94 N.W.2d 105 (1959). Pleadings, including those in default judgments, are to be construed so as to do substantial justice. I.R.C.P. 8(f); *Johnson v. Hartford Ins. Group*, 99 Idaho 134, 578 P.2d 676 (1978). A judgment by default may not exceed that prayed for in the demand. I.R.C.P. 54(c). Here, the district court found that Brown's complaint pertained to the strand. Farrell was served with that complaint with resulting inquiries. On these facts, we hold that despite ambiguities in the complaint, the Brown's judgment bars the Huetters title claim.[1]

The Huetters have not asserted a claim of title (exclusive of adverse possession which we address, *infra*) independent of that received through Mrs. Farrell and her husband, Paul J. Huetter.[2] The district court determined that Browns' action quieted title to the strand and was binding upon the plaintiffs in the present action. We agree.

■■■■■ Finally, the Huetters also have raised adverse possession and prescriptive easement claims to the entire strand. A party seeking to quiet title through a claim of adverse possession must prove exclusive possession, for a five-year period, by clear and satisfactory evidence. *Pincock v. Pocatello Gold & Copper Mining Co., supra.*

No claim of exclusive possession was asserted or established by the Huetters in this case. In particular, no exclusion of the Browns is claimed. Instead, testimony was presented that this largely unimproved shoreline occasionally had been used by the Huetter family and by others for swimming, camping, pedestrian access to adjacent property, and for similar recreation activities. Such limited possession and use was shared with the possession and use enjoyed by the Browns of their property, until the Browns constructed the fence to keep all but themselves from access to the beach. We affirm that the Huetters failed to establish an interest by adverse possession.

■■■■■ With respect to a prescriptive easement, the plaintiff bears a burden similar to that required for adverse possession. *See Hall v. Strawn*, 108 Idaho 111, 697 P.2d 451 (Ct.App.1985). Although exclusive use is not required, continuous and systematic use must be established. *Cordwell v. Smith*, 105 Idaho 71, 665 P.2d 1081 (Ct.App.1983). The district court found that the Huetters failed to meet their burden with respect to continuous and systematic use of any specific portion of the waterfront. This finding is not clearly erroneous and will not be disturbed. I.R.C.P. 52(a); *Viehweg v. Thompson*, 103 Idaho 265, 647 P.2d 311 (Ct.App.1982).

The judgment of the district court is affirmed. Costs to respondents Brown. No attorney fees on appeal.

---

1. Although we have cited the California rule, because the purposes served by the notice and identification roles of the property description differ somewhat we do not expressly adopt that test. Adequate notice is a creature of due process. Identification of the land is necessary to affect the property conveyance or quieting of title. The sufficiency of any description depends upon the purpose to be served and upon the particular circumstances of each case.

2. Although not necessary to resolution of this case, we also note that the Huetters' claim of title to that portion of the strand in Government Lot 4 is clearly without merit. The Huetters' chain of title includes only the "unplatted" portion of Government Lot 4. Through the evidence submitted in this case, the Huetters' chain of title can be traced back to its inception when Clam-se-net existed as a subdivision plat of record. In an action to quiet title a plaintiff must rely upon the strength of his or her own title and not merely assert weaknesses in that of another. *Owen v. Boydstun*, 102 Idaho 31, 624 P.2d 413 (1981); *Pincock v. Pocatello Gold & Copper Mining Co.*, 100 Idaho 325, 597 P.2d 211 (1979). The district court found that the southeastern portion of the strand was within the formerly platted portion of Clam-se-net, when Huetters' title was conveyed from the Coeur d'Alene Lake Land and Fruit Company. Thus, Huetters' chain of title is exclusive of any portion of the strand located in Government Lot 4 as part of former Clam-se-net.

BURNETT, J., concurs.

SWANSTROM, J., concurs in the result.