248 P.2d 540

**Application of BOYER.**

No. 7795.

Supreme Court of Idaho.

On Rehearing Oct. 7, 1952.

154

Parry, Keenan, Robertson & Daly, and Clifford E. Fix, all of Twin Falls, for protestants-appellants.

Merrill & Merrill, Pocatello, for applicant-respondent.

GIVENS, Chief Justice.

Respondent presently owns decreed appropriations of 11.2 cu. ft. per second of water from Big Lost River with dates of priority from June first, 1888 to May tenth, 1897, heretofore appurtenant to the SW¼ of Section 30, Tp. 6 North, Range 26 E., Boise Meridian, original diversion point in the NW¼ of Section 24, Tp. 6 North, Range 25 E., B. M.

Pursuant to Sections 42–108 and 42–222, I.C., September 16, 1946, respondent applied to the State Reclamation Department for a certificate to transfer 10.88 cu. ft. per second of the above appropriations to the SW¼ NW¼, south and west of the Oregon Short Line (U. P.) Ry. tracks and the W½ SW¼, Section 9 and NW¼, SW¼ NE¼ and NW¼ SE¼, Section 10, Tp. 3 North, Range 27 East, B. M., with new point of diversion in the NW¼ of Section 26, Tp. 4 North, Range 26 East, B. M., thus respectively approximately 18 or 20 miles down river.

Respondent's original point of diversion and land in Section 30 are within the

geographical confines of the Big Lost River Irrigation District. His water rights and the water rights of the District are entirely and completely distinct.

The Big Lost River Irrigation District protested the change on the grounds respondent had abandoned and forfeited his water rights by nonuse for periods of more than five years, Section 42–222, I.C.; that the transfer would injuriously affect the security of the District bonds because the land in Section 30 without water would be practically worthless; that water applied to this land, because of its extreme porosity immediately seeps and percolates back into the river to the benefit of other down stream appropriators; that the change would destroy such benefit; excessive transmission loss, likewise detrimental; and excessive allowance for use in Sections 9 and 10.

The Three-In-One Ditch Company's protest before the Department is not in the record, but it joined with the Irrigation District in its appeal to the District Court, both contending, in addition to the above objections, that their several consents were necessary under Section 41–108, I.C.A., as amended, 1947 Session Laws, Chapter 80, page 130, now Section 42–108, I.C.

On the trial de novo, the District Court, in upholding the State Reclamation Engineer in granting the change, found respondent had not abandoned or forfeited his water rights;

"* * * that the lands from which the transfer is sought are unproductive, gravelly and porous and that the waters applied thereto fail to produce crops in sufficient quantity to justify the use of said waters thereon; that the lands to which the water is sought to be transferred are fertile, highly productive, and capable of producing all kinds of agricultural crops with the application of said water; * * *."

and that the amount of water sought to be applied in addition to the rights already appurtenant to the lands in Sections 9 and 10 is proper for the irrigation thereof; that the consent to the change by neither the Irrigation District nor the Company was necessary; that the liens of the bonds of the District would remain upon the land and the waters, pursuant to statute; that the transfer will not result in any injury whatsoever to any water right claimed or owned by protestants, or any other person, or adversely affect them in any way, and no injury or damage of any kind would be sustained if said transfer is made.

The parties stipulated that respondent had the right, in the event of transfer, to transport his water through the Arco Canal.

### Non-Consent of Ditch Company

The petition, on appeal by the Big Lost River Irrigation District and the Three In One Ditch Company from the decision of the State Reclamation Engineer to the Dis-

trict Court, alleged in Paragraph VI, as follows:

"VI.

"That the right to the use of the diversion works and irrigation system used to apply said water to the land to which it is now appurtenant is represented by shares of stock in The Three In One Ditch Company and the irrigation system used to apply the said water to the land to which it is now appurtenant is managed by the District and that neither the District nor the Three In One Ditch Company have consented to the change in place of use or point of diversion applied for by I. W. Boyer."

Section 42–108, I.C., as amended and presently in force, after authorizing change of point of diversion and place of use, if others are not injured, continues:

"* * *; if the right to the use of such water, or the use of the diversion works or irrigation system is represented by shares of stock in a corporation * * *, no change in the point of diversion or place of use of such water shall be made or allowed without the consent of such corporation * * *." and with another exception, not pertinent herein.

█ Under the statute, the right to the use of a ditch for the conveyance of water therein must be represented by stock before the nonconsent of the ditch company will bar change of point of diversion or place of use. The evidence does not show the right to use the Three In One Ditch Company's ditch by respondent or his predecessors in conveying therein the water sought to be transferred, was represented by stock. It was conceded his water right is in no way connected with the water rights of the Big Lost River Irrigation District or the Three In One Ditch Company.

█ The burden of proof was upon appellants to prove the allegation in their petition. Woodruff v. Butte & Mkt. L. C. Co., 64 Idaho 735 at 740 (2–3), 137 P.2d 325.

█ The statute, therefore, was not applicable and the trial court was clearly justified in finding it was not necessary for respondent to have secured consent for the transfer from the Irrigation District or the Three In One Ditch Company. In re Department of Reclamation, 50 Idaho 573 at page 580, 300 P. 492.

Non-consent of Irrigation District.

█ The amendment to Section 42–108, I.C., requiring consent by an irrigation district, became effective February 25, 1947. The application herein was filed September 16, 1946 and the District's protest, October 7, 1946, which did not contain this point. This contention first appeared in the Petition on Appeal to the District Court filed March 11, 1948. Appellants contend the amendment, being procedural and remedial, may be given retroactive or retrospective effect. Conceding that it might be, on such

theory and not violative of the Constitution as contended by respondent, before a statute will be given retroactive and retrospective effect, the statute itself must contain words which indicate the Legislature intended it to have such retroactive and retrospective effect, and this amendment did not. Peavy v. McCombs, 26 Idaho 143 at page 151, 140 P. 965; Bellevue State Bank v. Lilya, 35 Idaho 270 at page 272, 205 P. 893. Brainard v. Coeur d'Alene A. Min. Co., 35 Idaho 742, 208 P. 855, recognized Bellevue State Bank v. Lilya, supra, the latter being in point herein and Brainard v. Coeur d'Alene A. Min. Co., supra, is not; Cook v. Massey, 38 Idaho 264 at page 268, 220 P. 1088, 35 A.L.R. 200; McCoy v. Krengel, 52 Idaho 626 at page 636, 17 P.2d 547; Kelley v. Prouty, 54 Idaho 225 at page 231, 30 P.2d 769; In re Pahlke, 56 Idaho 338 at page 342, 53 P.2d 1177; Independent School Districts etc., v. Common School Dist. No. 1, 56 Idaho 426 at page 434, 55 P.2d 144, 105 A.L.R. 1267. This amendment not being in effect when the application was initiated, does not apply thereto.

### Abandonment and Forfeiture.

Appellants introduced evidence showing that prior to the date of the application for some 30 or 40 years, no water had been used on respondent's lands in Section 30.

Both appellants and respondent throughout the record referred to some sort of an agreement or understanding between the parties that the use of water on the lands in Sections 9 and 10 since 1941, was under some kind of stipulation which did not thereby preserve, or give, respondent any rights. We have searched the record in vain to find this agreement. We have rather parenthetically held that the question of abandonment it not pertinent in a proceeding of this kind. Twin Falls Canal Co. v. Shippen, 46 Idaho 787, 271 P. 578; First Security Bank v. State, 49 Idaho 740, 291 P. 1064; Harris v. Chapman, 51 Idaho 283, 5 P.2d 733. Foregoing such pronouncement, to avoid a multiplicity of suits, and since, though respondent timely objected, this issue was presented and passed on, we meet and decide the point without circumlocution.

J. H. Pearson, the Water Master on Big Lost River, testified only surplus water, not respondent's decreed rights, was used on his lands in Sections 9 and 10 until 1946, though other portions of his testimony are clearly susceptible of being interpreted as unequivocally indicating that in 1946 part of this decreed water was used on respondent's lands in the Arco Tract.

M. S. Walker, the ditch rider on the Arco canal in 1941 and 1942, testified he delivered water through the Arco diversion to respondent's lands and that it was the account number (of water) transferred from up by Leslie—thus impliedly identifying it as respondent's appropriation.

Respondent and his son both testified water was used on their lands in the Arco

tract between 1941 and 1946 and up to the time of the trial.

Respondent's Exhibit 13 was the Irrigation District's bill or charge to Dave Daniels, Von Ellis and Parley Barr, respondent's renters, for water for 1943 of $22 for 55 acres Arco Tract land at $40 per acre operation and maintenance.

Respondent's Exhibit 14 was receipt by the District for $74.82 for "Arco tract applied on carrying charges."

Respondent's Exhibit 15 is a letter from the putative clerk of the District explaining its charges:

"Big Lost River Irrigation District
* * *

Mackay, Idaho
August 21, 1943

"Mr. Ira W. Boyer
Arco, Idaho
Dear Mr. Boyer:

"Received your check for $60.59, for the Boyer, Barnes and Barr assessments on the tract. However, you owe $34.83 more which I will explain to you. "On May 3rd, you paid $69.33 assessments on your account #384 (place near Darlington). Of this $24.32 was for bond interest and bond princ. leaving $45.01 for ditchrider and water master. As the water was used on the tract last year, you therefore do not owe ditchrider and watermaster assessments on the Arco Tract and on the District's bill your ditchrider is marked paid, however, Mr. Pearson did bill you for the watermaster but is cancelling that ($10.19). The $12.80 paid as O & M on #384 cannot be applied on your Arco Tract Assessment. The only credit you can take is the $10.18 as you were not billed for the ditchrider. "I will hold your check until I receive the $34.83 and will then issue receipts.

"Very truly yours,
s/ Ruth Hintze
Clerk."

Respondent's Exhibit 16 is a receipt similar to Ex. 14 for 1943 for $16 for 1942 O & M (operation and maintenance) on Arco Tract.

Respondent's Exhibits 12 and 17 are bills for $69.33 for 1942 and $284.01 for 1949.

Respondent's Exhibits 10 and 11 are receipts for 1941 and 1942, operation and maintenance, assessments and bond, interest and principal and other assessments.

Thus, bills were rendered and payments made by respondent for water delivered by the District. The District showed no water was delivered to Section 30, so the water must have been, and two of the exhibits show the water was, delivered to the Arco Tract.

Aside from nonuse in Section 30, there was no evidence of intent to abandon, and the evidence is clearly to the contrary.

 Forfeitures are abhorrent and all intendments are to be indulged against a forfeiture. Zezi v. Lightfoot, 57 Idaho 707,

68 P.2d 50; Idaho Farms Co. v. Northside Canal Co., D.C., 24 F.Supp. 189.

■ The correct rule was thus, in essence, announced in Carrington v. Crandall, 65 Idaho 525, 147 P.2d 1009:

"Although statutory abandonment of a water right has occurred, forfeiture is not effective if, after five-year period original owner or appropriator resumes the use of the water prior to claim of right by a third party. (I.C. A., sec. 41–216.)" now Section 42–222, I.C.

and similarly in Wagoner v. Jeffery, 66 Idaho 455, 162 P.2d 400.

No one claims this particular decreed water by adverse possession and clearly, so far as this proceeding is concerned, it was in part at least used by respondent on some of his Arco lands before it was claimed it had been forfeited.

■ The trial court was justified in holding that water had been so used by respondent that he had not abandoned or forfeited his water rights, correctly applying the principles announced in the Carrington and Wagoner cases, supra.

### Transmission Loss.

Transmission losses, as such, were disposed of by the stipulation that in the event of transfer, they should be fixed at 30%.

### Return-flow Loss.

The floor of Lost River Valley is an alluvial aquifer, into and through which water readily percolates and seeps. Prior to the 1930's, the Utah Construction Company owned a Carey Act [2] project including lands some miles south and west of Arco and the Arco Tract south and east therefrom, the latter including respondent's lands to which he seeks to change the place of use. Various water rights had been acquired for this project, including storage rights between November and May, and a dam to impound them erected northwest of Mackay. Fifty cubic feet per second were required to be allowed to pass the dam during the winter, the balance being stored. This seasonal storage, though some water percolated through and/or under the dam, so reduced the water table in the alluvial formation of the valley below the dam as to interfere materially with the earlier direct flow appropriations and the attempt to force the water out on to these Carey Act lands resulted in excessive loss. The Irrigation District was organized to purchase and in 1936 did purchase for some $238,-000 the water rights of the Utah Construction Company, which were appurtenant to the Carey Act lands and the attempt to irrigate such lands was abandoned, the larger portion of which was west and somewhat south of Arco, known as the Era Tract; the smaller portion in the Arco Tract.

■ Appellants strenuously urge the catastrophic effect of again attempting to use water on these so-called outside tracts, portraying the repetitious horrendous effect upon the water table, urging that if this ap-

plication be granted, others will follow suit and thus again the former vicious cycle repeats itself. Appellants likewise argue that merely because respondent is the first to attempt such change entitled him to no consideration. This latter thought, however, is contrary to the underlying basic principle of water rights in the State of Idaho, that first in time is first in right, and as the evidence does not show other rights were immediately injured by this change, the mere fact that injury *might* result if other and subsequent similar changes of place of diversion and use were granted, is not a valid reason to reject respondent's application.

Several miles below Mackay and near Leslie, above respondent's original point of diversion, the waters in the river tend to sink and rise again above his original point of diversion. They rise again a few miles below Leslie and tend to sink again south of Darlington, i. e., below respondent's original point of diversion, and rise above Moore, then sink and again rise above the place where the Arco and Munsey canals take out on opposite sides of the Big Lost River. To avoid these losses, the water users have for some years used the Leslie by-pass, which is a canal that takes out of the river shortly above where the Three-In-One Ditch takes out, comes back into the river in Section 33, Tp. 6 North, Range 26 East, B. M., and again a by-pass known as the Eastside Canal, which takes off in Section 4, Tp. 5 No., Range 26 E., B. M.,

and comes back into the river at about the point of diversion of the Arco Canal.

Appellants' main contention with regard to injury is that respondent's water used in Section 30 will immediately percolate into the soil and back into the river, thus available to be taken out therefrom in various canals of the Irrigation District, and there will be no return underground flow from the use of the water in the Arco Tract to the river above any points of diversion.

Several witnesses testified on behalf of appellants that this condition generally would prevail, but they had made no definite study or determination of a definitive amount of water that would get back into the river from use of water on respondent's lands in Section 30, or to the extent the flow of the river would be augmented thereby and directly available to other users, certainly not as to any specific user or ditch.

J. H. Pearson thus certified on the application as one of the statutory prerequisites:

"* * * that no one will be injured by the transfer prayed to be authorized; and I hereby endorse my approval of said petition, and request that the Commissioner of Reclamation issue the certificate of transfer as petitioned; * * * for the following reasons; More beneficial use of water on more fertile soil."

Appellants attempted to show Mr. Pearson meant there would be no injury to any particular individual, but there would be

general injury and damage because the water not being applied on Section 30, there would be a tendency to lower the water table below that point and above other diversions, and also because it would take from other appropriators, water necessary to insure even 70% of respondent's appropriation at the intake of the Arco Canal. On the original application, Mr. Pearson recommended a 30% carrying channel loss. At the trial he testified this loss might be as high as 48%. The parties themselves stipulated that 30% was the proper figure. Mindful of appellants' admonition, we are now considering and concerned with return-flow loss, not transmission loss, as distinct features.

Outside of the estimable treatise, Geology and Ground-Water Resources of the Snake River Plain in Southeastern Idaho, by Harold T. Stearns, Lynn Crandall and Willard G. Steward, U. S. Dept. of the Interior Water-Supply Paper 774, page 243 et seq., referred to in appellants' brief and of which we may take judicial notice, no definite figures or estimates based on any investigations were given and these did not specifically apply to or directly pertain to a return flow from water used on Section 30, or Sections 9 and 10.

Thus, from a critique most favorable to appellants, *at the most* there was either a conflict in the evidence or uncertainty and lack of essential exactitude of loss by seepage and percolation on Section 30, and to what extent the water applied there—thus in effect wasted—would return to either the channel of the river or the Eastside by-pass canal, resulting in benefit to other appropriators, and that diversion lower down would thereby substantially injure them.

In the final analysis, appellants, or other water users, below respondent's original point of diversion, have used the water appropriated to him either when he did not use it at all, or when used in Section 30 it became waste water.

Not having abandoned or forfeited it, and no one claiming any prescriptive rights thereto, no one has shown any rightful claim to the original or natural flow of respondent's water.

It is axiomatic that no appropriator can compel any other appropriator to continue the waste of water whereby the former may benefit. Sebern v. Moore, 44 Idaho 410 at page 418, 258 P. 176; Colthorp v. Mountain Home Irr. Dist., 66 Idaho 173 at page 179, 157 P.2d 1005; Johnson v. Twin Falls Canal Co., 66 Idaho 660 at page 669, 167 P.2d 834. If respondent, by a different method of irrigation in Section 30 could so utilize his water that it would all be consumed in transpiration and consumptive use, Water Supply and Utilization, page 340, Baker & Conkling, John Wiley & Sons, 1930, and thus no waste water return by seepage or percolation to the river, no other appropriator—from the

evidence herein—could complain. Reynolds Irrigation Dist. v. Sproat, 70 Idaho 217 at page 222, 214 P.2d 880. Instead of thus changing the method of use, respondent accomplishes the same result by changing the point of diversion, loss in transmission having been taken care of by stipulation. The rule that a junior appropriator has the right to a continuation of stream conditions as they were at the time he made his appropriation, could not compel respondent to continue to waste his water by use on Section 30. Reynolds Irr. Dist. v. Sproat, 69 Idaho 315 at page 334(7), 206 P.2d 774.

Therefore, we can not say the finding of the trial court that there would be no substantial interdicting injury to others, is not sustainable.

Impairment of Security for District Bonds.

The learned trial court held the proportionate liability of the bonded indebtedness of the District on Section 30, with the water right as originally appurtenant thereto, remained, regardless of the transfer. This sufficiently protects the District's Bonds. In re Rice, 50 Idaho 660 at page 668, 299 P. 664.

The record does not show that the transfer of respondent's water herein considered, in addition to the appropriation he otherwise owns for the Arco land, will result in excessive use thereon. In re Robinson, 61 Idaho 462, 103 P.2d 693. Experience alone will demonstrate this and, therefore, appellants' contention in this regard at this time does not justify a refusal of the transfer.

The decree authorizing the transfer is, therefore, affirmed. Costs awarded to respondent.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.