70 P.3d 669

**SAGEWILLOW, INC., Plaintiff–Appellant,**

v.

**IDAHO DEPARTMENT OF WATER RESOURCES, James Mays, Mays Land and Livestock, Blaine County Canal Company, Defendants–Respondents.**

No. 27534.

Supreme Court of Idaho,
Idaho Falls, September 2002 Term.

April 10, 2003.

Rehearing Denied June 12, 2003.

834

Barker, Rosholt & Simpson, Boise; Holden, Kidwell, Hahn & Crapo, Idaho Falls, for appellant Sagewillow, Inc. Norman M. Semanko and Kent W. Foster argued.

Hon. Alan G. Lance, Attorney General; Phillip J. Rassier, Deputy Attorney General, Boise, for respondent Idaho Department of Water Resources. Phillip J. Rassier argued.

Givens Pursley, LLC, Boise, for respondents James Mays, Mays Land and Livestock, and Blaine County Canal Company. Michael C. Creamer argued.

EISMANN, Justice.

This is an appeal from an order of the Idaho Department of Water Resources declaring that various water rights owned by Sagewillow, Inc., had been forfeited in whole or in part due to nonuse. Because the Department incorrectly applied the resumption-of-use defense raised by Sagewillow, we vacate the order and remand this case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

In 1989 and 1993, Sagewillow, Inc., purchased various parcels of real property, together with appurtenant water rights, located in Butte County. The properties acquired in 1989 were known as the Knollin Ranch, the Bird Ranch, the North of Road Place, and the Homestead Place. The property acquired in 1993 was known as the Frew Place.

The water rights appurtenant to the Knollin and Bird Ranches originally consisted of fourteen surface water rights for irrigation with priorities ranging from 1906 to 1913, a surface water right for soil root zone storage with a priority of 1949, and two groundwater rights for irrigation from a total of sixteen wells with priorities of 1950 and 1957. The North of Road Place and Homestead Place

each originally had an appurtenant groundwater right for irrigation with priorities of 1959 and 1960 respectively. The water rights appurtenant to the Frew Place originally consisted of two groundwater rights for irrigation with priorities of 1959 and 1972.

The water rights originally appurtenant to the properties purchased by Sagewillow could irrigate 2,383 acres. For approximately twenty years, however, the land irrigated on those properties totaled 1,412 acres. After purchasing the properties, Sagewillow began increasing the number of acres irrigated. Sagewillow irrigated 2,000 acres in 1991, 2,100 acres in 1992, and 2,390 acres in 1993.

In October 1990, Sagewillow filed an application to transfer the place of use and point of diversion of a groundwater right on the Bird Ranch. Nobody protested the transfer, and the Department of Water Resources (Department) formally approved it in October 1992.

In 1994, Sagewillow filed seven more transfer applications with the Department seeking to change the places of use for its six groundwater rights. James Mays, Mays Land and Livestock, and the Blaine County Canal Company (herein collectively referred to as "Mays") filed protests to the requested transfers, and the proceeding was expanded to adjudicate whether Sagewillow's surface and ground water rights had been forfeited by nonuse. Following a hearing, the Department held that the water rights appurtenant to the North of Road Place and Homestead Place had been forfeited and that the water rights appurtenant to the Knollin and Bird Ranches and the Frew Place had been partially forfeited. Under the Department's order, Sagewillow would only be permitted to irrigate 1,412 acres. The Department also conditionally approved Sagewillow's requested transfers and voided the transfer that it had approved in 1992.

Sagewillow sought judicial review of the Department's order in the district court of the seventh judicial district, which affirmed the order. Sagewillow then appealed to this Court. We held that, under the statutes in effect at that time, the Snake River Basin Adjudication district court had exclusive jurisdiction to review the Department's decision

and the District Court of the Seventh Judicial District lacked jurisdiction to review the Department's order. We therefore vacated the decision of the district court and remanded this case to the Snake River Basin Adjudication district court. *Sagewillow, Inc. v. Idaho Dept. of Water Resources,* 135 Idaho 24, 13 P.3d 855 (2000).

In response, the legislature enacted Idaho Code § 42–1401D to provide that judicial review of Department actions that are subject to review under the Idaho Administrative Procedure Act shall not be heard in the Snake River Basin Adjudication district court, but shall be heard in the district court authorized by Idaho Code § 67–5272. Ch. 31, § 2, 2001 Idaho Sess. Laws 47, 48. The statute also provided that it applied to all cases pending on its effective date (March 2, 2001) or thereafter initiated. *Id.* As a result, on March 7, 2001, the Snake River Basin Adjudication district court transferred this case back to the District Court of the Seventh Judicial District, in and for Butte County. On March 27, 2001, without further briefing, argument, or hearing, the district court reissued its prior memorandum decision. Sagewillow then appealed.

## II.  ISSUES ON APPEAL

A.  Did the Department of Water Resources correctly apply the doctrine of resumption of use?

B.  Is there substantial and competent evidence supporting the finding that water rights acquired by Sagewillow, Inc., had been forfeited?

C.  Did the Department of Water Resources err in voiding the water rights transfer that it had approved in 1992?

D.  Was the Department of Water Resources authorized to participate as a party in a proceeding for judicial review of the Department's decision?

## III.  ANALYSIS

█ A party aggrieved by a final order in a contested case decided by an agency may file a petition for judicial review in the district court. IDAHO CODE §§ 67–5270(3)

(2001). On an appeal from the district court's decision on that petition, this Court reviews the agency record independently of the district court's decision. *Sanders Orchard v. Gem County, Idaho,* 137 Idaho 695, 52 P.3d 840 (2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. *Id.;* IDAHO CODE § 67–5279(1) (2001). Rather, this Court defers to the agency's findings of fact unless they are clearly erroneous. The agency order may be overturned only where it: (a) violates statutory or constitutional provisions; (b) exceeds the agency's statutory authority; (c) was made upon unlawful procedure; (d) is not supported by substantial evidence in the record as a whole; or (e) is arbitrary, capricious, or an abuse of discretion. In addition, the order must be upheld if substantial rights of the appellant have not been prejudiced. *Sanders Orchard v. Gem County, Idaho,* 137 Idaho 695, 52 P.3d 840 (2002); IDAHO CODE § 67–5279(4) (2001). If the order is not affirmed, it shall be set aside in whole or in part and the case remanded. IDAHO CODE § 67–5279(3)(e) (2001).

## A. Did the Department of Water Resources Correctly Apply the Doctrine of Resumption of Use?

Idaho Code § 42–222(2) (1990) provides:

All rights to the use of water acquired under this chapter or otherwise shall be lost and forfeited by a failure for the term of five (5) years to apply it to the beneficial use for which it was appropriated and when any right to the use of water shall be lost through nonuse or forfeiture such rights to such water shall revert to the state and be again subject to appropriation under this chapter.

Idaho law has contained a similar provision since 1903.[1] This Court has held, however,

that abandonments and forfeitures are not favored. *Zezi v. Lightfoot,* 57 Idaho 707, 68 P.2d 50 (1937). Therefore, "although statutory abandonment did actually occur, the forfeiture is not effective if, after the five-year period, the original owner or appropriator resumed the use of the water prior to the claim of right by a third party." *Carrington v. Crandall,* 65 Idaho 525, 531–32, 147 P.2d 1009, 1011 (1944). Sagewillow contends that it resumed use of its water rights during the period from 1989 to 1993. The parties disagree as to whether the resumption-of-use doctrine still applies, and, if so, how it should be applied in this case.

The Department contends that resumption of use only applies if there are no junior appropriators in the same or an interconnected water source. If there are junior appropriators, then the resumption of use will not apply. According to the Department, as a matter of law the resumption-of-use doctrine only applies to the most junior appropriator. Thus, in this case the Department's conclusion of law regarding resumption of use was as follows:

17. Other users are not required to assert a specific claim to the water rights or water represented by rights held by the user attempting to resume his use. The existence or establishment of a junior water right is sufficient claim to the water. The resumption doctrine cannot restore portions of water rights forfeited by Sage Willow's [sic] predecessor in interest to the detriment of other water right holders.

In making its argument, the Department relies upon the following language in *Jenkins v. State, Dept. of Water Resources,* 103 Idaho 384, 387–88, 647 P.2d 1256, 1259–60 (1982) (citations omitted):

If a water right has indeed been lost through abandonment or forfeiture, the right to use that water reverts to the state and is subject to further appropriation.

---

1. The relevant portion of the statute enacted in 1903 provided:

All rights to the use of water acquired under this act or otherwise, shall be lost and abandoned by a failure, for the term of two years, to apply it to the beneficial use for which it was appropriated and when any right to the use of water shall be lost through non-use or aban-

donment, such right to such water shall revert to the State and be again subject to appropriation under this act.

Sec. 11, 1903 Idaho Sess. Laws 223, 234. In 1905, the length of the period of nonuse for there to be a forfeiture was increased from two years to five years. Sec. 11, 1905 Idaho Sess. Laws 27.

Other parties may then perfect a water right in those waters. Hence a person making a subsequent appropriation will be injured by resumption of the abandoned or forfeited water right. If a senior right has been abandoned or forfeited, the priority of the original appropriator is lost, and the junior appropriators move up the ladder of priority. If a senior right which had been forfeited or abandoned were allowed to be reinstated through a transfer proceeding, clearly injury would result to otherwise junior appropriators. Priority in time is an essential part of western water law and to diminish one's priority works an undeniable injury to that water right holder.

The Department particularly emphasizes the statement, "If a senior right has been abandoned or forfeited, the priority of the original appropriator is lost, and the junior appropriators move up the ladder of priority." The Department construes this statement as holding that if there are junior appropriators, a senior appropriator cannot avoid a forfeiture by resuming use after a five-year period of nonuse. *Jenkins* did not so hold, however.

In *Jenkins,* the water user did not raise the issue of resumption of use. Thus, this Court did not address the issue of whether resumption of use is applicable to prevent a forfeiture when there were junior water rights on the water source. Rather, the above-quoted statement merely holds that once a water user's rights have been forfeited by nonuse, allowing the water right to be reinstated through a transfer proceeding would harm junior appropriators because once there was a forfeiture the junior appropriators moved up the ladder in priority. As this Court stated in *Jenkins,* "Priority in time is an essential part of western water law and to diminish one's priority works an undeniable injury to that water right holder." 103 Idaho at 388, 647 P.2d at 1260. In *Jenkins* there was an express finding that the watercourse was overappropriated.

There is, however, a connection between harm to junior appropriators as discussed in *Jenkins* and junior appropriators making a claim to water sufficient to defeat the defense of resumption of use. The junior appropriators would be harmed if there would not be sufficient water to fill their water rights due to the senior appropriator being permitted to resume his use. That would typically occur when the watercourse was overappropriated, as in *Jenkins.* Conversely, if the watercourse was overappropriated and, after the senior appropriator's five-year period of nonuse, the junior appropriators were using water to the extent it was available—water that would not have been available had the senior appropriator been filling his water right—then the junior appropriators would have made a claim to the water not used by the senior appropriator.

The mere existence of a junior appropriator, however, is not sufficient to show that the junior appropriator has made a claim of right to the water not used by the senior appropriator. The junior appropriator must also have used the water for a beneficial purpose. For example, in *Albrethsen v. Wood River Land Company,* 40 Idaho 49, 231 P. 418 (1924), the plaintiffs brought an action to have a portion of a senior appropriator's water right declared forfeited. Both the plaintiffs' and the defendant's water rights had been adjudicated under a prior decree, but the plaintiffs contended that the defendant had for over five years not used its entire decreed right because its canal lacked the capacity to carry that quantity of water. The trial court ruled on behalf of the defendant, but this Court reversed that judgment on appeal. When doing so, this Court stated:

> [I]t is clear that it [the canal] has never had the capacity to carry the maximum amount of water claimed by respondent and decreed to it in 1909, and from the whole record it is clear that this excess has not been diverted and applied to a beneficial use by respondent, *it is subject to the rights of subsequent appropriators under the Frost decree upon their showing that they have so applied this excess.*

40 Idaho at 56–57, 231 P. at 420 (emphasis added).

The requirement that junior appropriators have used the water is consistent with this Court's statement of the resumption-of-use doctrine that the prior use must be resumed "prior to a claim of right by a third party." *Carrington v. Crandall,* 65 Idaho 525, 532,

147 P.2d 1009, 1011 (1944). Under the Department's argument, if the three most junior appropriators did not use their water rights for five years, the second and third most junior appropriators would forfeit their water rights, but the most junior appropriator would not. The most junior appropriator, by his mere existence, would be held to have made a claim of right to the water of the second and third most junior appropriators even though none of them used any water.

In the instant case, the Department did not make any finding that after the statutory period of nonuse and before resumption of use by Sagewillow and/or its predecessors, any junior appropriator used water that was available because of continued nonuse by Sagewillow and/or its predecessors.[2] The Department likewise did not make any finding that during such period any third party applied for and obtained a water right in the same or an interconnected watercourse. For example, the Department did not find that the two watercourses involved in this case were overappropriated and that because of continued nonuse by Sagewillow and/or its predecessors, junior appropriators received water that they would otherwise not have received. The Department's lack of findings on this issue is further complicated by the fact that because of their priority dates, Sagewillow's surface water rights at issue could be filled only during periods of high water flow. The Department did not find that after the statutory period of nonuse, there was water available that could have been used to fill some or all of Sagewillow's water rights. If no water was available, a third party obviously could not have made a claim to it by applying it to a beneficial purpose.

Mays argues that the legislature has abolished the resumption-of-use doctrine by the portion of Idaho Code § 42–222 that provides as follows:

> Upon proper showing before the director of the department of water resources of good and sufficient reason for nonapplication to beneficial use of such water for

such term of five (5) years, the director of the department of water resources is hereby authorized to grant an extension of time extending the time for forfeiture of title for nonuse thereof, to such waters for a period of not to exceed five (5) additional years.

This provision was first added to Idaho law in 1933. Ch. 193, 1933 Idaho Sess. Laws 382, 385. It does not by its terms expressly abrogate the resumption-of-use doctrine. Mays contends it did so by implication.

■ Although this Court has not previously addressed Mays' argument, in 1982 this Court stated that the statutory extension of the five-year period provided by Idaho Code § 42–222(2) and the doctrine of resumption of use were both viable defenses to forfeiture.

> Statutory forfeiture is based upon the legislative declaration in I.C. § 42–222(2) that water rights may be lost if they are not applied to a beneficial use for a period of five continuous years. Certain defenses to forfeiture have been recognized. Extension of the five year period may be made upon a showing of good cause, providing the application for extension is made within the first five-year period. I.C. § 42–222(2). Also wrongful interference with a water right or failure to use the water because of circumstances over which the water right holder has no control have been recognized as defenses. Further, if use of the water right is resumed after the five year period, but before any third parties make a claim in the water, then the courts will decline to declare a forfeiture.

*Jenkins v. State, Department of Water Resources*, 103 Idaho 384, 389, 647 P.2d 1256, 1261 (1982). The two defenses are not mutually exclusive. Both the statutory extension and the resumption-of-use doctrine can operate independently of each other.

This Court first acknowledged the resumption-of-use doctrine in 1937, *Zezi v. Lightfoot*, 57 Idaho 707, 68 P.2d 50 (1937), four years after the enactment of the statutory provision for an extension of the period of nonuse.

---

2. The continued nonuse after the statutory five-year period need not be for any specific period of time. It need only be long enough for a third party to have made a claim to the water prior to any resumption of use by the party whose water rights were forfeited.

The statutory extension was obviously not enacted in order to eliminate the doctrine of resumption of use because that doctrine had not yet been announced in Idaho. After the enactment in 1933 of the statutory provision for extension of the five-year forfeiture period, this Court in several cases applied to resumption-of-use doctrine. *Zezi v. Lightfoot,* 57 Idaho 707, 68 P.2d 50 (1937); *Wagoner v. Jeffery,* 66 Idaho 455, 162 P.2d 400 (1945); *In re Boyer,* 73 Idaho 152, 248 P.2d 540 (1952). In 1969, the legislature substantially amended the statute providing for the extension of the five-year forfeiture period by adding comprehensive procedures for processing and giving notice of applications for such extensions. Ch. 303, § 2, 1969 Idaho Sess. Laws 905, 908–09. When doing so, the legislature did not amend the statute to eliminate the resumption-of-use doctrine. There is simply no indication that the legislature intended to abolish the resumption-of-use doctrine by enacting the statutory provision for an extension of the five-year period of nonuse in order to avoid a forfeiture.

■ Relying upon language in *Carrington v. Crandall,* 65 Idaho 525, 531–32, 147 P.2d 1009, 1011 (1944), Mays also contends that for the resumption-of-use doctrine to apply, it must be the original appropriator who resumes use of the water and not a successor in interest to the original appropriator. The first case in which this Court applied the resumption-of-use doctrine was *Zezi v. Lightfoot,* 57 Idaho 707, 68 P.2d 50 (1937). In that case, this Court held that resumption of use of water before its appropriation by another prevented the statutory forfeiture of the water right. The resumption of use in that case was not by the original appropriator. Although it is unclear from the facts whether the owner of the water right at the time was the original appropriator, it is clear that the owner of the water right was not the one who resumed use of it. Use of the water right was resumed by persons using the water with permission of the owner of the right and the owner's lessee. This Court has not held that application of the resumption-of-use doctrine is limited to resumption of use by the original appropriator, and we decline to do so.

Sagewillow argues that a "claim of right" by a third party must be the commencement of a judicial or administrative forfeiture action, or a new appropriation of the water, or conduct amounting to adverse possession that would provide notice that the third party is claiming the water. It contends that no such claim of right was shown in this case. This Court has not previously expressly addressed what constitutes a "claim of right" by a third party. There are three cases, however, in which this Court has applied the doctrine of resumption of use.

This Court first applied the resumption-of-use doctrine in *Zezi v. Lightfoot,* 57 Idaho 707, 68 P.2d 50 (1937). The plaintiffs claimed a total water right of 500 miner's inches from Grimes Creek in Boise County with priority dates of 1933 for 270 inches and 1934 for 230 inches. The defendants claimed a water right of 1000 miner's inches with a priority date of 1905. The defendants' point of diversion was upstream from that of the plaintiffs. Neither the defendants nor their predecessors in interest had used water from Grimes Creek from 1905 to 1932. In 1934 the defendants diverted almost all of the water from Grimes Creek for their claimed 1000-inch water right, thereby shutting off the plaintiffs' supply of water. The plaintiffs immediately filed a lawsuit to enjoin the defendants' use of the water. The trial court ruled in favor of the plaintiffs, and the defendants appealed. The defendants' water right was called the "Noble" right because it was originally appropriated for use on the Noble placer claims.

After stating the facts, this Court then declared the resumption-of-use doctrine as follows:

It will be noticed that it is the nonuse for five years which works an abandonment. Abandonments and forfeitures are not favored. And even though forfeited and abandoned for five-year periods prior to the time respondents [plaintiffs] initiated their appropriation, if subsequent to such five-year periods, and prior to respondents' appropriation, appellants [defendants] or their predecessors in interest under claim of right and continuity of interest of diversion and application of the Noble water, as

such, for mining purposes to the amount applied, rediverted and applied water, there would be no abandonment which could inure to the benefit of respondents. 57 Idaho at 713, 68 P.2d 50. Thus, to avoid forfeiture of their water rights, the defendants would have had to resume use of the water right before the plaintiffs' appropriation. At that time, the plaintiffs could appropriate the water either by diverting it and applying it to a beneficial use or by obtaining a permit from the State Reclamation Department. *Silkey v. Tiegs,* 51 Idaho 344, 5 P.2d 1049 (1931); *Nielson v. Parker,* 19 Idaho 727, 115 P. 488 (1911). The plaintiffs in *Zezi* acquired their 1933 water right for 270 inches by diversion and appropriation to a beneficial use, and they acquired their 1934 water right for 230 inches by obtaining a permit.

A third party named Whittle & Company had the right to divert 500 miner's inches of water from a point upstream from both the plaintiffs' and the defendants' points of diversion. This water right was called the Howard right. The defendants had given Whittle & Company permission to use the Noble water right in 1932. During that year, Whittle & Company diverted 700 to 800 inches of water from Grimes Creek. Thus, the issue was whether the water diverted by Whittle & Company in 1932 consisted of 500 inches of the Howard right and 200 to 300 inches of the Noble right, or 700 to 800 inches of the Noble right and none of the Howard right, or some other combination. This Court resolved that issue by stating that the plaintiffs had the burden of proving that Whittle & Company did not use the Noble right.

Respondents' [plaintiffs'] suit to quiet title as against appellants [defendants] on the theory that there had been an abandonment of the Noble water right placed the burden of proof upon respondents to show that the 700 or 800 inches used by Whittle & Co. in 1932 consisted of the full Howard right for 500 inches, in other words, if the 700 or 800 inches was in fact Noble water, there was no abandonment. 57 Idaho at 714, 68 P.2d at 53. This Court then held that the plaintiffs had failed to prove that the water used by Whittle &

Company was not entirely Noble water, and therefore the trial court should have held that the defendants retained a valid right to 700 miner's inches of water.

The uncontradicted evidence shows that Whittle & Co. used between 700 and 800 inches and there is not sufficient evidence showing this was not Noble water to sustain the burden cast upon respondents [plaintiffs]. Whittle & Co. had the right to use both Noble and Howard water. Appellants [defendants] ask no affirmative relief, merely resisted respondents' contention that the Noble water right had been abandoned, and the court should have found that appellants even though they had abandoned all in excess of 700 inches of their original claimed appropriation of 1,000 inches, still retained by Whittle & Co.'s use in 1932 of Noble water, a valid right for 700 inches, as such, which would prevent the barring application of the abandonment statute.

57 Idaho at 714–15, 68 P.2d at 53.

This Court next applied the resumption-of-use doctrine in *Wagoner v. Jeffery,* 66 Idaho 455, 162 P.2d 400 (1945). In 1927 the plaintiff drilled six wells on a forty-acre parcel of unappropriated public land and filed with the federal government an application for a right-of-way to construct a canal across the land to convey water from the wells to his real property. In 1930 he constructed the canal and used it to convey water from the wells to his property, but he did not attempt to use the wells again until 1943. In 1932 the defendants took possession of the land upon which the wells were located. In 1934 the federal government issued plaintiff a right-of-way for the wells and the canal. In 1938 the federal government granted defendants a patent to the land upon which the wells and canal were located, subject to existing water and ditch rights. In December 1943, the plaintiff began cleaning out the canal and enlarging the wells in order to resume use of the water for irrigation. The defendants ordered plaintiff and his employees off the property, and the plaintiff filed suit to enforce his right to the wells and canal. The defendants did not contend that they had ever used any water from the wells for irri-

gation or any other beneficial purpose. The trial court found in favor of the plaintiff, and the defendants appealed. This Court held that under the resumption-of-use doctrine plaintiff did not forfeit his water right by nonuse. In doing so, this Court stated:

> Abandonments and forfeitures are not favored, and even though forfeited and abandoned for five year periods, if subsequent to such five year periods, respondent again took possession of the right of way and wells in question, as found by the trial court, under a claim of right and continuity of interest, prior to the initiation of any right therein or claim thereto by appellants, there would be no abandonment which could inure to the benefit of appellants.

66 Idaho at 459–60, 162 P.2d at 402. This Court also stated:

> In the instant case, at the time respondent again took possession of the right of way and the wells in question, Congress had not (and has not) declared a forfeiture, nor had appellants commenced a suit against respondent for the purpose of obtaining a decree of forfeiture.

66 Idaho at 460, 162 P.2d at 402. When summarizing its holding, this Court also stated that in December 1943 the plaintiff had retaken possession of the canal and wells "before any intervening right had attached." 66 Idaho at 461, 162 P.2d at 403.

The final case is *In re Boyer,* 73 Idaho 152, 248 P.2d 540 (1952). In 1946 Boyer applied to change the point of diversion and the place of use of his water right, both of which had previously been within the geographical confines of the Big Lost River Irrigation District. Boyer's property within the Irrigation District was called his Section 10 lands, and he also owned land outside the District called his Arco lands. When Boyer filed his application, no water had been used on his Section 10 lands for thirty to forty years. The Irrigation District objected to the transfer on the grounds that it would be harmed by the change and that Boyer had forfeited his water rights by nonuse for a period of five years. There was evidence that Boyer had been using the water on his Arco lands.

Boyer prevailed before the State Reclamation Department, and the Irrigation District appealed to the district court, where there was a trial de novo. The district court found no forfeiture, and the Irrigation District appealed to this Court. This Court resolved the forfeiture issue as follows:

> The correct rule was thus, in essence, announced in *Carrington v. Crandall,* 65 Idaho 525, 147 P.2d 1009:
>> 'Although statutory abandonment of a water right has occurred, forfeiture is not effective if, after five-year period original owner or appropriator resumes the use of the water prior to claim of right by a third party. (I.C.A., sec.41–216.)' now Section 42–222, I.C.
> and similarly in *Wagoner v. Jeffery,* 66 Idaho 455, 162 P.2d 400.
> No one claims this particular decreed water by adverse possession and clearly, so far as this proceeding is concerned, it was in part at least used by respondent on some of his Arco lands before it was claimed it had been forfeited.
> The trial court was justified in holding that water had been so used by respondent that he had not abandoned or forfeited his water rights, correctly applying the principles announced in the Carrington and Wagoner cases, supra.

73 Idaho at 160, 248 P.2d at 544.

In summary, in the *Zezi v. Lightfoot* case, this Court stated that the water user had resumed use of its water right prior to the time that others "initiated their appropriation." In the *Wagoner v. Jeffery* case, this Court stated that the water user had retaken possession of his wells and canal prior to "the initiation of any right therein" by others, before the adverse parties had "commenced suit against [him] for the purpose of obtaining a decree of forfeiture," and "before any intervening right had attached." In the *In re Boyer* case, this Court stated that no one claimed the water by adverse possession and the water user had used the water on other lands "before it was claimed it had been forfeited." Finally, although not involving the resumption-of-use doctrine, but also relevant, is this Court's statement in *Albrethsen v. Wood River Land Company* that where a

senior appropriator failed to use all of its decreed water right for over five years, the unused excess was "subject to the rights of subsequent appropriators under the Frost decree upon their showing that they have so applied this excess." 40 Idaho at 56–57, 231 P. at 420.

Under the resumption-of-use doctrine, statutory forfeiture is not effective if, after the five-year period of nonuse, use of the water is resumed prior to the claim of right by a third party. *Carrington v. Crandall*, 65 Idaho 525, 531–32, 147 P.2d 1009, 1011 (1944); *Zezi v. Lightfoot*, 57 Idaho 707, 68 P.2d 50 (1937). A third party has made a claim of right to the water if the third party has either instituted proceedings to declare a forfeiture, *Wagoner v. Jeffery*, 66 Idaho 455, 162 P.2d 400 (1945), or has obtained a valid water right authorizing the use of such water with a priority date prior to the resumption of use, *Zezi v. Lightfoot*, 57 Idaho 707, 68 P.2d 50 (1937), or has used the water pursuant to an existing water right, *Albrethsen v. Wood River Land Company*, 40 Idaho 49, 231 P. 418 (1924).[3] Because there can be a partial forfeiture of water rights by nonuse for five years, *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 727, 947 P.2d 400 (1997), a resumption of use of only a portion of a water right prior to a claim of right by a third party will only prevent the forfeiture of that portion of the water right, *Zezi v. Lightfoot*, 57 Idaho 707, 68 P.2d 50 (1937) (where use of only 700 miner's inches of water was resumed before a claim of right by a third party, appropriator only retained a right to 700 inches of the original 1000–inch appropriation). The resumption of use must also be upon land to which the water right is appurtenant. *McCray v. Rosenkrance*, 135

Idaho 509, 20 P.3d 693 (2001). Because the Department based its order upon an erroneous statement of the resumption-of-use doctrine, we must vacate the order and remand for further proceedings consistent with this opinion.

**B. Is There Substantial and Competent Evidence Supporting the Finding that Water Rights Acquired by Sagewillow, Inc., had been forfeited?**

The party asserting that a water right has been forfeited by nonuse for a period of five years has the burden of proving the forfeiture by clear and convincing evidence. *Carrington v. Crandall*, 65 Idaho 525, 147 P.2d 1009 (1944). Although the owner of the water right has the burden of raising defenses to statutory forfeiture,[4] *Jenkins v. State, Department of Water Resources*, 103 Idaho 384, 647 P.2d 1256 (1982), the burden of persuasion remains on the party claiming that the water right was forfeited, and that party must disprove the defense. *Zezi v. Lightfoot*, 57 Idaho 707, 68 P.2d 50 (1937) (the party asserting there was a forfeiture of a senior water right had the burden of persuasion on issue that there was no resumption of use of the senior water right before the party's appropriation). See also *In re Boyer*, 73 Idaho 152, 248 P.2d 540 (1952) (parties alleging forfeiture of water right have burden of proof).

**1. Failure to find forfeiture by clear and convincing evidence.** Forfeiture of water rights must be proven by clear and convincing evidence. *McCray v. Rosenkrance*, 135 Idaho 509, 20 P.3d 693 (2001). In its order, the Department expressly found that with respect to the two ground water rights appurtenant to the Homestead Place, "For-

---

**3.** Prior to diversion, the water obviously cannot be identified as being the water entitled to be used by any particular appropriator. Whether or not a third party has made a claim to the water will usually depend upon evidence showing that the water source was overappropriated and, because of nonuse of water by the senior appropriator, water was available for use and used to fill junior water rights, or by evidence showing that resumption of use by the senior appropriator would diminish the quantity of water being used by junior appropriators from an interconnected water source.

**4.** The defenses that have been recognized are extension of the five-year period pursuant to Idaho Code § 42–222; wrongful interference with the water right by others; failure to use the water because of circumstances over which the water right holder has no control; resumption of use after the five-year period of nonuse if it is before a claim of right by a third party; and where Indian reserved rights are involved. *Jenkins v. State, Dept. of Water Resources*, 103 Idaho 384, 647 P.2d 1256 (1982); *Gilbert v. Smith*, 97 Idaho 735, 738, 552 P.2d 1220, 1223 n. 2 (1976).

feiture was established by clear and convincing evidence." The Department did not state that the forfeiture of Sagewillow's other water rights was proven by clear and convincing evidence. The Department argues that this Court should review the evidence in the record and decide whether there is clear and convincing evidence supporting the Department's findings. To do so would require that we weigh the evidence, however. Our role on appeal is to determine whether there is substantial, competent evidence supporting findings of fact made by the trier of fact, not to make those findings. *Sowards v. Rathbun,* 134 Idaho 702, 8 P.3d 1245 (2000). Since the Department's order is being vacated, on remand the Department can make sure that any finding of forfeiture was proven by clear and convincing evidence.

**2. Failure to find that Sagewillow, or its predecessors, did not exercise the surface water rights during five consecutive years that the water was available.** Water rights are not forfeited because of the failure to use them for a period of five years if such failure is caused by circumstances beyond the control of the water right holder. *Jenkins v. State, Department of Water Resources,* 103 Idaho 384, 647 P.2d 1256 (1982). The fourteen surface water rights appurtenant to the Knollin and Bird Ranches were later priority rights that could only be delivered during high water flows. Sagewillow raised the defense below that the evidence did not show water was available during the years of nonuse. The Department did not make any finding on that issue. Because water rights cannot be forfeited by nonuse if the water was not available and Sagewillow raised that issue, the Department must find that water was available for Sagewillow's use before it can find that Sagewillow forfeited water rights by nonuse of the water. Therefore, on remand the Department can address this issue.

**3. Lack of evidence regarding forfeiture of water rights appurtenant to the Frew place.** In 1993, Sagewillow acquired from Terry and David Hawley 230 of the 260 acres of the Frew Place. Sagewillow contended that in connection with that purchase, it acquired all of the water rights appurtenant to the 260-acre Frew Place, not just the water rights appurtenant to the 230 acres it purchased. Sagewillow's transfer applications included the entire 260-acre water right. The Department limited Sagewillow's water rights appurtenant to the Frew Place to 230 acres. On appeal, Sagewillow contends that the Department based its finding of forfeiture upon acreage irrigated by Sagewillow after it purchased the Frew Place and not upon a five-year period of nonuse. The respondents argue that the Department's order regarding the Frew Place can be upheld on the ground that Sagewillow failed to prove it acquired the entire 260-acre water right.

Although there is ambiguity in the Department's order, it appears that the Department ruled that the disputed 30-acre water right regarding the Frew Place had been forfeited. In its findings of fact, the Department stated as follows:

**Forfeiture of a Portion of the Frew Place of Use**

In the ARO [amended recommended order], the hearing officer held that the place of use for water right nos. 33–02086 and 33–07018 should be limited to 230 acres because of the testimony of Terry Scanlan (Scanlan) and corroborating evidence by Charles Brockway (Brockway), the expert for Sage Willow [sic]. Sage Willow [sic] states that Brockway's testimony and exhibits do not corroborate Scanlan's testimony. Sage Willow [sic] recites facts regarding the purchase of the water rights and the land by Sage Willow [sic] which were not introduced into evidence at the hearing and were not available to the hearing officer in reaching his decision. The number of acres in the Frew Place, authorized by water right nos. 33–02086 and 33–07018, will be limited to 230 acres.

In its conclusions of law, the Department stated, with respect to the Frew Place, as follows: "The combined testimony of Vance Hawley and Terry Scanlan regarding the total place of use for the remainder of the Bird Ranch, the Knollin Ranch, and the Frew Place, establishes a historically irrigated acreage of 1,412 acres during a period of at least two decades."

Even though the order refers to post-hearing evidence offered by Sagewillow to show that it acquired the entire 260–acre water right, it also refers to the amended recommended order by the hearing officer. That order refers exclusively to the issue of forfeiture, and not to any lack of evidence regarding whether Sagewillow acquired 260–acre or 230–acre water rights when it purchased the Frew Place. The amended proposed order states, "Sage Willow [sic] cannot argue that the Department should recognize 260 acres of irrigation in the Frew Place when its own expert does not identify, even in a liberal interpretation, more than 230 actual irrigated acres. This decision will recognize 230 acres irrigated in the Frew Place."

The paragraph in the Department's order is entitled "Forfeiture of a Portion of the Frew Place of Use," and in its conclusions of law the Department also refers to evidence regarding the historical use of water on the Frew Place, not whether Sagewillow had acquired a 260–acre or 230–acre water right. There is no express finding that Sagewillow failed to prove that it acquired a 260–acre water right. Thus, it appears that the Department held that the 30–acre water right at issue regarding the Frew Place had been forfeited. Because we are vacating the order based upon the Department's misapplication of the resumption-of-use doctrine, we need not address whether there was sufficient evidence of a five-year period of nonuse.

### C. Did the Department of Water Resources Err in Voiding the Water Rights Transfer that It Had Approved in 1992?

In October 1990, Sagewillow filed an application to transfer the place of use and point of diversion of a groundwater right on the Bird Ranch. Nobody protested the transfer, and the Department formally approved it in October 1992. In its order in this case, the Department declared that transfer void because the evidence in this case showed that the water right was forfeited prior to the approval of the transfer. On appeal, Sagewillow argues that because the Department approved the transfer of this water right in 1990, the doctrines of res judicata and collateral estoppel prevent the Department from now declaring that the water right had been forfeited.

The doctrine of res judicata applies to administrative proceedings. *Hansen v. Estate of Harvey*, 119 Idaho 333, 806 P.2d 426 (1991); *J & J Contractors/O.T. Davis Constr. v. State by Idaho Transp. Bd.*, 118 Idaho 535, 797 P.2d 1383 (1990). In *Joyce v. Murphy Land & Irrigation Company*, 35 Idaho 549, 553, 208 P. 241, 242–43 (1922), this Court stated that the scope of the doctrine of res judicata was as follows:

> We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.

The 'sameness' of a cause of action for purposes of application of the doctrine of res judicata is determined by examining the operative facts underlying the two lawsuits. *Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982).

For policy reasons, however, we have recognized certain exceptions to the rule stated in *Joyce*. *Heaney v. Bd. of Trustees of Garden Valley School Dist. No. 71*, 98 Idaho 900, 575 P.2d 498 (1978) (although former school superintendent could have joined his claim for damages for breach contract with his petition in earlier action for writ of mandamus to compel reinstatement, his failure to do so did not bar his damages claim); *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983) (where gun club's lawsuit to recover damages in trespass based upon homeowner's connection to gun club's waterline was dismissed upon a finding that gun club had granted homeowner a license to do so, and homeowner subsequently brought a lawsuit against the gun club because it later cut and capped the water line, the judgment in the first lawsuit did not preclude litigation in the second lawsuit of the issue of whether the license was revocable because that issue was not ripe for trial until the license was actually revoked); *Nash v. Overholser*, 114 Idaho 461, 757 P.2d 1180 (1988) (although

tort action against spouse for assault and battery could have been brought in divorce proceeding, judgment in divorce action did not bar later tort action because mandatory joinder of tort claims with equitable divorce proceedings may be undesirable, as well as unfair).

■■■■ An application to transfer the point of diversion or place of use of a water right is made by the party claiming the water right. Any claim that the water right had been abandoned or forfeited in whole or in part by nonuse would be an issue raised either by the Department or a third party. Ordinarily, issues of forfeiture or abandonment are not adjudicated in a transfer proceeding, although they can be. *Jenkins v. State, Dept. of Water Resources,* 103 Idaho 384, 647 P.2d 1256 (1982); *In re Boyer,* 73 Idaho 152, 248 P.2d 540 (1952). It would be a substantial burden upon the Department to require that in response to every transfer application it conduct an investigation into whether the water right(s) involved had been lost or reduced by forfeiture or abandonment. Therefore, we hold that if forfeiture or abandonment is not actually raised as an issue in a proceeding to transfer the point of diversion or place of use of a water right, the final order in the transfer proceeding is not res judicata on the issue of whether the water right at issue had been forfeited or abandoned. Collateral estoppel likewise does not apply because the issue whether the water right had been forfeited or abandoned was not actually litigated in the transfer proceeding. Collateral estoppel only applies to issues actually litigated and decided in the prior proceeding. *Magic Valley Radiology, P.A. v. Kolouch,* 123 Idaho 434, 849 P.2d 107 (1993).

■■■■ Sagewillow also alleges that equitable estoppel and/or quasi estoppel prevent the Department for declaring a forfeiture of the water right. Equitable estoppel may not ordinarily be invoked against a government or public agency functioning in a sovereign or governmental capacity. *Young Elec. Sign Co. v. State ex rel. Winder,* 135 Idaho 804, 25

P.3d 117 (2001). There is no basis for applying equitable estoppel in this case. One of the elements of equitable estoppel is a false representation or concealment of a material fact with actual or constructive knowledge of the truth. *Id.* Sagewillow has not pointed to anything that would constitute a false representation or concealment of a material fact by the Department.

■■■■ Unlike equitable estoppel, quasi estoppel does not require as a necessary ingredient concealment or misrepresentation of existing facts. *Willig v. State, Dept. of Health and Welfare,* 127 Idaho 259, 899 P.2d 969 (1995). It applies when it would be unconscionable to allow a party to assert a right that is inconsistent with a prior position. *Id.* Sagewillow argues that in reliance of the Department's approval of the transfer of the water right, it made a substantial investment and changed its position. In that transfer proceeding, however, the Department did not take the position that the water right was valid. When approving the transfer in 1992, the Department expressly stated that the approval did not preclude later review of the validity of the water right.[5] Therefore, there was no basis for application of the doctrine of quasi estoppel under the facts of this case.

**D. Was the Department of Water Resources Authorized to Participate as a Party in a Proceeding for Judicial Review of the Department's Decision?**

■■■■ Sagewillow contends that the Department is not authorized to participate as a party in this judicial review. It argues that the Idaho Administrative Procedure Act, Idaho Code §§ 67–5201 *et seq.,* does not provide for participation by agencies in judicial review of actions or orders in contested cases that affect individual rights. Idaho Code § 67–5270(3) (2001) provides, "A party aggrieved by a final order in a contested case decided by an agency other than the industrial commission or the public utilities commis-

---

5. The approval included as a condition the statement, "Approval of this transfer does not preclude the opportunity for review of the validity of the water right(s) in the ongoing Snake River Basin Adjudication."

sion is entitled to judicial review under this chapter if the person complies with the requirements of sections 67–5271 through 67–5279, Idaho Code." The word "party" is defined as "each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party." IDAHO CODE § 67–5201(13) (2001). The word "person" is defined as "any individual, partnership, corporation, association, governmental subdivision or agency, or public or private organization or entity of any character." IDAHO CODE § 67–5201(15) (2001). Sagewillow named the Department as a party respondent in its petition for judicial review,[6] and by statute "party" includes "each ... agency named ... as a party." Sagewillow has not pointed to any other provision of the Idaho Administrative Procedure Act providing that an agency cannot be a party on a petition for judicial review of that agency's action in a contested case. Therefore, the Department is properly a party to this appeal. Indeed, if a requested transfer or a point of diversion or place of application for a water right were denied by the Department and there were no third parties who protested the requested transfer, under Sagewillow's argument only the applicant for the transfer could participate in the petition for judicial review.

## IV. CONCLUSION

For the above reasons, we vacate the order of the Department and remand this case for further proceedings. We award costs on appeal to the appellant.

Chief Justice TROUT and Justice WALTERS concur.

Justice KIDWELL, concurring in the result.

The doctrine of resumption of use is antiquated and without continued viability in light of the full appropriation of most water systems in Idaho. Therefore, I feel it is time to abandon this once useful doctrine. However, the result reached would be the same in this case. Therefore, I concur in the result reached by the majority.

6. Sagewillow's petition for judicial review filed on May 7, 1996, was entitled "Sagewillow, Inc.,

## ANALYSIS

In Idaho, a water right is forfeited after a five-year period of non-use. IDAHO CODE § 42–222(2) (2002). The statute states a water right holder may avoid forfeiture upon a: "proper showing ... of good and sufficient reason for nonapplication to beneficial use of such water for ... five (5) years." Id. Upon such a showing: "the director of the department of water resources [may] grant an extension of time ... for forfeiture of title for nonuse" for up to five years. Id. Extension of the forfeiture period may only be granted when it will not impair existing water rights. Id.

Previous Idaho case law suggests, in dicta, that resumption of use, a common law defense to abandonment, may apply in cases of statutory forfeiture. See, e.g., Zezi v. Lightfoot, 57 Idaho 707, 68 P.2d 50 (1937); Carrington v. Crandall, 65 Idaho 525, 147 P.2d 1009 (1944); Wagoner v. Jeffery, 66 Idaho 455, 162 P.2d 400 (1945). Although somewhat obfuscated by prior case law, careful scrutiny of IDAHO CODE § 42–222(2) demonstrates that the legislature did not include the antiquated doctrine of resumption of use as a defense to forfeiture.

If a statute is clear, this Court need not engage in an exercise of statutory construction. Hamilton ex rel. Hamilton v. Reeder Flying Service, 135 Idaho 568, 572, 21 P.3d 890, 894 (2001). The statute will be given its plain meaning and this Court will not add to, or take away from, the unambiguous statute by means of statutory construction. Canal/Norcrest/Columbus Action Committee v. City of Boise, 136 Idaho 666, 670, 39 P.3d 606, 610 (2001). Further, the legislature may repeal the common law, either expressly or by enacting a statute that is inconsistent with the application of the common law. Olsen v. J.A. Freeman Co., 117 Idaho 706, 718, 791 P.2d 1285, 1297 (1990). Common law remains in effect only to the extent it is not inconsistent with the relevant statute. Id. at 719, 791 P.2d at 1299.

Application of the resumption of use doctrine is inconsistent with I.C. § 42–222(2), which states the method by which a water

Petitioner, v. Idaho Department of Water Resources, Respondent."

right holder may avoid forfeiture is to request an extension of time. The plain meaning of the statute does not support the conclusion that resumption of use is a defense to statutory forfeiture; nor can resumption of use be read into or inferred from the statute. By expressly identifying extension as the sole defense to forfeiture, the legislature eliminated resumption of use as a defense to forfeiture.

In addition to the legislature's intent to eliminate resumption of use as a defense to forfeiture through the plain language of I.C. § 42–222(2), the doctrine is antiquated and not viable in Idaho's current water rights system. As stated by this Court in *Jenkins:*

> [i]f a water right has indeed been lost through abandonment or forfeiture, the right to use that water reverts to the state and is subject to further appropriation. Other parties may then perfect a water right in those waters. Hence a person making a subsequent appropriation will be injured by resumption of the abandoned or forfeited water right. If a senior right has been abandoned or forfeited, the priority of the original appropriator is lost, and the junior appropriators move up the ladder of priority. If a senior right which had been forfeited or abandoned were allowed to be reinstated through a transfer proceeding, clearly injury would result to otherwise junior appropriators. Priority in time is an essential part of western water law and to diminish one's priority works an undeniable injury to that water right holder.

*Jenkins v. State Dept. of Water Resources,* 103 Idaho 384, 387–88, 647 P.2d 1256, 1259–60 (1982) (citations omitted). Due to the fact that most, if not all, of Idaho's water is appropriated, there are few, if any, practical opportunities to apply resumption of use. Allowing continued application of the doctrine is undesirable because any unused water in Idaho will be quickly put to beneficial use by junior appropriators, who would be injured by a resumption of use by a former senior user who forfeits their water right.

Justice SCHROEDER concurs.